18-1885 and 18-2027, John Lavery v. Restoration Hardware Long-Term Disability Benefits Plan, et al. Ms. Medley. May it please the Court, my name is Lori Medley and I represent the defendant's appellant's Aetna Life Insurance Company and Restoration Hardware Incorporated Long-Term Disability Plan. At the outset, I would like permission to reserve two minutes for rebuttal. You may have it. May it please the Court, under the deferential, arbitrary and capricious standard of review, Aetna's application of the pre-existing condition clause, regardless of which look-back period applies, was reasonable and supported by the record. Therefore, summary judgment should have been granted for the appellant and the complaint dismissed. Why do you think arbitrary and capricious applies here, given that the people providing the benefits are the same as the people making the decision on the benefits, a sort of inherent conflict of interest? That does not in and of itself change the standard of review from arbitrary and capricious to de novo. It's something we can take into account, yes. It is something that can be taken into account as a factor in determining if the decision was arbitrary and capricious, but our point, our argument as set forth in our papers is that plaintiff has not met his burden of proof here of showing that there was an actual conflict that actually impacted Aetna's decision-making in this case. The fact that your medical personnel, on the first review of the benefits, as well as on the first review of the appeal from the denial of benefits, recommended that he get the benefits and that the pre-existing conclusion condition clause did not apply, and they were overruled, which is evidence that the plaintiff has met his burden of proof. You say that that does not in any way show that the insurer actually was influenced by this structural conflict? No, because first off, the medical reviewers, as Your Honor just described them, the medical reviewers are not the ones tasked at Aetna with making that decision. That may not matter. The fact is that the company sort of reversed course twice. Our position is they did not reverse course because the medical reviewer's job was just to look at the medical records and report back to the disability benefits manager what was contained in each specific record. Their job was not to look at the terms of the plan and interpret the terms of the plan and say, okay, I've got the records. I'm sorry, are you saying the medical reviewers are ignorant of the terms of the plan, that they have no standard by which to review the medical evidence? You can't be arguing that. I'm not arguing that, but what we are saying is that the medical reviewers do not, it's not their responsibility, though, to interpret and to apply the terms of the plan to the decision. It's not up to them to make the decision whether or not a test of disability was met or whether or not a preexisting condition clause here was met. They can maybe make a recommendation to the disability benefits manager, but at the end of the day, it's the disability benefits manager whose job it is to take what the medical reviewers say and what the plan terms say and to interpret those plan terms and apply both pieces of the puzzle to come up with a formal decision and to communicate that formal decision to the claimant. Can I correct both on the initial determination for the initial denial and the appellate decision that Therese Linebeck was the DBM?  Sure. Therese Linebeck was the disability benefits manager during the initial decision. When the administrative appeal was first filed, she did, as the records show, review to see whether or not the initial review should be reopened. However, the actual DBM who was responsible for the appeal was ultimately Ashley Carey, as she's the one who communicated the formal decision. What in the record tells us that? At the chronological claim notes toward the end, when you're getting within, I believe it was a short time period before the appeal letter was submitted, Ms. Carey becomes the claim owner and also the appeal letter that was sent to Mr. Lavery is sent under the name of Ashley Carey. She was the appeal specialist who was ultimately responsible for the appeal. I don't see anything in the record that identifies Ashley Carey as a DBM. Are you aware of anything? I would say DBM is more of a generic term that's used there. Disability benefit managers, they all have different titles depending on what their position is, but there are different claim specialists who handle the initial review. And then when you go to the appeal, there's a separate staff, there's a separate appeals claim staff, and she was in that staff. My question is, are you aware of any information in this record that shows that Ashley Carey was a DBM? Her title. And where is that in the record? The title would be under her signature line in the appeals letter. And the title is? I don't have the appeals letter in front of me, but it was something along the lines of appeal specialist. Specialist? So that's not, so it doesn't show she's a DBM. I ask that because you stress in your brief, your blue brief, that at Aetna, the only person authorized to make this central determination that is at issue in this case is a DBM. So therefore, I've looked through the record to see what the DBMs say. And the only DBM who appears to be weighing in on this, at least as the notes you've given us, is Steinbeck, I believe her name is. Steinbeck. And so hence my question, was Ashley Carey, is there anything that shows Ashley Carey is a DBM? You've cited me just to the appeal denial letter. Well, also to, in the discovery that plaintiff was permitted to seek us to the conflict of interest issue, that was in a interrogatory asking us to identify the individuals, the disability benefit managers, and we did identify that in our interrogatory responses, which the district court did accept as part of the motion for summary judgment. So that is in the record as well. And then I had a related question. Do I understand that during the litigation, the plaintiff moved to supplement the record, the administrative record, to add in facts relevant to the alternative defense of the second look back claim? What plaintiff sought to amend the record to include were emails between himself and his employer, Restoration Hardware, that he contends claims that under Massachusetts state law, he was misclassified as an independent contractor for a period of time when he should have been classified as an employee. There was no medical information in there. The district court denied that motion for the grounds asserted in our opposition, which was in part that he had already been given a chance to seek conflict of interest discovery. But this seems very unfair. You, at the last moment, because of miscommunications between your client and the employer, came up with an alternative theory for why the plaintiff should not be entitled to benefits, and that's being the revised look back period. And you announced that to him for the first time in the appeal denial letter. So there's obviously nothing in the administrative record that would respond to that. During the litigation, he then seeks to supplement the alternative record to add something that he thinks is responsive to that, and you oppose it. Well, actually, just to take a step back, to say that he did not make that argument during his internal appeal is actually incorrect. I didn't say he didn't make the argument during the appeal. I said he had no opportunity to respond to the point that you raised for the first time in the appeal denial letter. That is correct. And when he sought an opportunity to respond to it during the litigation, you convinced Judge Casper to deny him that opportunity. We did seek to oppose it, and Judge Casper did agree to not include that information. And you want us to then rely on your having raised that argument, to which you successfully precluded him from replying, as an alternative grounds for reversing the judgment below. Actually, as we explain in our papers, our position is that under either look-back period, the month of April 2014 is contained under either one. Do you or do you not want us to rely on the revised look-back period as an alternative grounds for reversing a decision below? Yes, but because the month of April 2014, which was contained under either look-back period, is contained in the first look-back period and in the one that contains the month of June. Do you want us to rely on the actual diagnosis of melanoma that occurred in June as a triggering event, which means we have to rely on the revised look-back period? No. Our contention is that in April 2014, he sought treatment for the lesion. The lesion was a physical manifestation of the melanoma. Okay. So we can ignore the June. Yes. Thank you. Yes. Except for this, you say the appeals specialist? Ms. Carey. Ms. Carey, who ultimately denies, relies on two grounds. Yes. She relies on the preexisting conditions, but she also relies on the revised look-back period, right? So both of those decisions are attributable to the person that you say is a DBM, and both of them in some ways show that the insurer is behaving in a self-interested manner here. I share Judge Kayada's view that you cannot fairly spring on someone a new look-back period. It's not permitted by ERISA, totally apart from issues of fairness, and yet she approved that. Correct? Yes. All right. That brings me then to our second argument, which is that if the court finds that summary judgment should not have been granted to Aetna, that the proper remedy here is to remand. Remand so that we can either go back and reopen the appeal and allow Mr. Lavery to submit whatever arguments and information he wants. Your medical people found that he was in fact disabled, and the evidence in the record seems to suggest that as well. How long has this litigation been going on? Since roughly fall of 2017, I believe. But we disagree with that point. And he's not been paid long-term disability benefits in the interim. No, because we disagree that a finding was made that he was disabled. Is it correct that he has not been paid the benefits? Well, it's correct that he has not been paid. All right. We do actually understand your reasons. Let me ask you about those reasons. He submitted a claim with documentary support for disability under his ONOC disability period. Correct. And you tasked your nurses and other people to look at that, went through a whole period, gave a denial and the like, and we got the medical evidence. To what would you point us in the record that would support a finding by your client that he was not disabled within the ONOC definition? Well, that is the problem. There's an absence of information in the record. There is no analysis that was undertaken. Under the own occupation test of disability, Your Honor, the test is whether or not you're functionally impaired from performing the material duties. I don't think you've quite answered my question. My question is, is there anything in the record, and are you saying, no, we didn't have a chance to compile it? I would say, no, they never undertook that analysis. And now you want to do it three years later? Our position, that would be the proper course because they are, as the administrator, they are supposed to be making the first initial decision. Alternatively, if the court felt that it would be equitable to award some benefits, our position is that there is no basis, at least in the record, for any reasonable, to move on to the second test of the any reasonable occupation test of disability because the records there only go through June 2015. Sure, separate point. Is that a two-year ONOC period? Yes, it's 24 months. Okay. So you're looking then, and obviously you didn't have a chance to assess the 25th month in this particular case. So I can kind of understand that argument. But your argument, you go back to month one of the ONOC period, seems quite draconian. You're saying that we can process an entire claim, take the normal time, come up with reason one, reason one here being pre-ex, an issue of denial, and then litigate that for two or three years. And if we lose that, we can then say, well, now we'd like to look and see if we've got another reason for denying this. And what would we do then if we litigate that for two or three years and it's determined that he wasn't or he was disabled? Would you have then reason three? Doesn't it make much more sense that you have your chance to consider this disability claim. You can decide whether there are any reasons to deny or grant it. If there are reasons to deny it, you list them all, and that's the way we move on. Because this is supposed to pay money to someone who's lost income but has to buy groceries, pay their rent, and things like that. Well, if there's a prerequisite, there is no legal basis to say that you have to move on. If there's a prerequisite that has not been met, there is no adoption of a definite theory or application here of the law that says that you must still go on and find every single reason that you could or could not have denied disability benefits. So based on the record before that, I felt the preexisting condition clause applied and felt the need not to go further. And that has been found acceptable in other cases, and they've remanded it back to the administrator. I understand what you're saying about a period of time has gone by and he has not received benefits. But ultimately, at the end of the day, if the decision is that he should have received benefits, he will receive them. He will get the back pay award. Great. Well, his estate gets them after they bury him? I'm sorry, did you say state or estate? Estate. His estate. His heirs. How much longer do you think it's reasonable for the insurer to have to make a decision about his disability? Are you going to string this out for another few years? No, I don't think that's... I thought he had to produce the evidence of disability at the time he made his claim. And if you were unsatisfied with that, you had the opportunity to ask at the time he made the claim for further information. What additional evidence could be produced at this point? Using your standard of producing additional evidence that you applied to him when he sought to produce additional evidence. Aetna could have independent peer reviewers contact his doctors and speak to them regarding the timeframes that are at issue here and discuss with him what his condition was at that time, what impairments his treatment or medical treatment was having on him at that course of time, and then could take that with the medical records and make an analysis. They can also speak directly to Mr. Lavery, which is what they would often do if they had made a disability determination. Whether he met that plan of test of disability, they would have spoken directly to Mr. Lavery and spoken to him and asked him about his activities of daily living. They can still go back and ask him at that point in time what was it, and they would have to accept what the representations were, despite the fact that it's now so many years forward. Those are not in the record, which is why we're saying that no disability determination was ever made here by Aetna, because none of that... It's interesting. You say other courts have said it's perfectly permissible to engage in this iterative process of decision-making, first step one, then step two, then step three, and it's okay to go through litigation. And yet you do say that it's hard to go back and recreate the past. So it strikes me that that, on occasion, may end up being a bit arbitrary and actually not in the interests of the ERISA insurer. I'm not quite certain why Aetna would have adopted a policy like that. You just described the cost of having to go back in time and try to recreate data you could have gotten at the time if you had asked for it. What's the rationale? The rationale is that they looked at the plan and they said, okay, do you meet these prerequisites? And if the prerequisites are not met... What's the business rationale? If we have one ground to deny, then it's not in our interest to go any further? I think it's just, you know, that is their interpretation and how they proceed under their policy with reviewing the plan. See, the odd thing is, too, the record, the DBM, who your brief tells us is the key decision-maker, did not approach this in an iterative, step-by-step, string-it-out way. She actually, at one point, made a recommendation to approve the claim. That means not just, say, pre-ex is inapplicable, but also to represent a determination by the DBM that, based on all the medical evidence supplied by Mr. Lavery, he meets the ONOC definition. That was the opinion of your own DBM. And so it seems very odd for Aetna to come and say, we have our trustee hat on, we don't have our insurer hat on, so we're behaving like a fiduciary, because a fiduciary who believed the pre-ex applied would probably be saying, look, we think the pre-ex applies, but if it doesn't, this poor fellow should be paid, and we would pay him. Instead, you're sounding like any way to deny paying this fellow, you don't want to let go of it. I think our position is what the record reflects, is that there were internal deliberations, but there was no formal or informal final decision with regard to whether disability benefits should be awarded. And that the only formal consistent determination was made was that the pre-existing clause did apply. Okay. Sorry to belabor you. You have two minutes for rebuttal after we hear from your opponent. Thank you. Good morning, and may it please the Court. There are two things that are very clear from this record. One is that the determination here turned on the pre-existing condition clause. As the Court has just indicated through its questions, there is medical information. There's information that he had been diagnosed with stage 3 malignant melanoma, that as a result of his treatment, he was unable to work, as Judge Cuyata noted. There's an entry by Theresa Weinbach saying disability is supported. So I don't see how Aetna can argue that there's no evidence in this record medically to support the claim of disability. How about they had another argument, which I thought they were going to stick to, which would sound reasonable, that okay, you're right, we thought he was met the ONOC definition period. Our only basis for denying it was pre-ex. If we lose on pre-ex, the fellow should be paid under ONOC. But had they paid him under ONOC as time went forward after two years, they would have switched over under the plan to a narrower definition of disability and would have had a right certainly at that point. Why shouldn't they still have that right to do something they could not have done back at the time? I think there's a couple of different reasons, Your Honor. This court repeatedly in the Cook case, in the Glista case, and in the Bard case, those are all situations where faced with the choice of remanding or allowing benefits, the court chose to... No, no, I think you're missing the point. Let's refine this. Even if there is an affirmance of the order to pay benefits, does the insurer have the chance now to raise the issue of any occupation? I thought you had conceded in your briefs that they did have that ability. Perhaps I misread your briefs, and perhaps you are now making an argument, no, they've given up that right as well. I think that is a misreading, respectfully, Your Honor, of our brief. Our position is that it's too late. Their initial denial was in 2015. It's now been four years since he received any benefits. That means that the ENEOC phase, phase two, kicked in 2017. So it's been two years since that happened. And as this court recognized in Bard, for example, it's colossally unfair to say to somebody, you need to go back and prove what your condition was two years ago because we screwed up and didn't put you on notice that you had to continually be providing evidence to us about what your condition was. This court also has considered in Glista, for example, the nature of the person's condition and what's going to follow from delay. Mr. Library now has stage four cancer, and as the court knows, anything that goes forward is going to likely result in further litigation. At least there's a prospect of further litigation. We'll be here again two or three years from now arguing over the ENEOC phase. So I think in the context of this case, given the factors the court has looked at before in terms of the unfairness of having to go back and retroactively establish that you were disabled, the nature of the condition, and I think it's fair to say this court also has considered the blameworthiness, for lack of a better word, about why we're here in the first place. And here, as the court noted, Aetna had settled on no consistent application of its own preexisting conditions clause. The court has already referenced the flip-flopping back and forth amongst its staff there. And to raise the line back, the evidence suggests both in the initial stage and then at the appeal stage determined herself, along with two different experts, that the preexisting conditions clause did not apply here. Suppose he began working a year and a half ago. You're saying he should still get benefits for the last year and a half? Well, he didn't start working, but even if he... Well, the record doesn't show that, does it? Well, no, because the record... Right. That's the point. We're dealing with a subsequent later determination. If he started working, certainly he shouldn't be getting benefits. Well, I think the difficulty, though... Conversely, if he didn't start working, he'd have a very credible case for disability because even though he was getting no benefits at all, he still wasn't working, right? True, but our contention is he had a very credible claim back in 2015 when he was denied. Do you feel the district court decision as having resolved this issue? It's not so clear to me. I think she did because when the court awarded interest on the back benefits, the interest was calculated for the benefits being payable up to the date of judgment. I think what this court has recognized... That's beyond two years? That's beyond two years, yes. But then how about from that date forward? I think from... Like, how about next month? I think from the date of judgment forward, the admin does have the right to go back and review the file and make a determination. That's what the court said in part. Okay. Obviously, you can't award... Two questions, please. One is, is there any medical evidence in the record as to the duration of the treatments, which I understand are themselves quite disabling? I don't know the answer to that off the top of my head. I know there's medical information, but on that particular issue, I don't know off the top of my head. Okay. Secondly, on this question of which hat Aetna is wearing as the trustee fiduciary or as the insurer, do you have any courts ever taken into consideration the litigation position taken by the insurer after the denial of benefits? Not to my knowledge, Your Honor. I think the focus has been more on the claims handling process itself. Would there be any reason one way or the other to take that into account or not to take that into account? I mean, honestly, Your Honor, I could see an argument either way. I think it maintains its position as a trustee. It maintains its responsibility to make decisions in the best interest of the plan members. And here they've stood by this position, even though it's clear, I would submit, that they were flip-flopping back and forth. They had not settled on any one particular interpretation, and they've steadfastly, nonetheless, claimed with a shifting argument about who was the disability benefits manager, who had the right to make the decision, what the standard was. They've stopped by that claim, and they've therefore brought us to the point where it's now four years later. He still hasn't received any benefits. So I think there is an argument that there's an ongoing act here that's contributing to the harm. And that's another argument I would submit for not remanding so they can have another bite of the apple. Yeah, my question, though, wasn't about remand. It was about the arbitrary and capricious standard of review. But a rule that would discourage a company from taking a litigation position supporting its denial of benefits would also have a number of bad repercussions. So that may be why no court has ever gotten into it. And I'm not aware of any court having reached that issue, Your Honor. Although in GLSTA, did we have some of that? I wrote that opinion a long time ago. You did. Your Honor, I don't remember anything in GLSTA specifically on that topic looking at the litigation posture that you then took in that case. So I can't say that it did. All right, if there are no further questions, we'll rest on our brief. Bill, I know. Thank you. Thank you. May it please the Court just to address Judge Lynch, your last question regarding GLSTA? No, there is no discussion about litigation position. Thank you. And as Mr. Churchill has said, too, I am unaware of any decision where any court has gone that far to say that what you say in litigation now should be taken into account to determine the arbitrary and capricious standard of review. All the cases I've reviewed have solely based it on what the record of the administrative record is and not gone further into litigation. Well, let's explore that a little. Suppose during litigation the insurer agreed that its interpretation that its people had reached in the claim decision-making was wrong. Wrong. Certainly a court would rely on that. Wrong how? What, 180 degrees wrong? I think that if the court of that position had been advanced, I think a settlement probably would have been reached in the litigation and we would not be here today. No, there's no settlement, just someone admitted. I think it's a different argument to concede in litigation that, on retrospect, their position was wrong because you're now conceding a defense. Well, suppose in litigation someone advocated an alternative interpretation of the clause that none of the claims people relied on? Well, that would be improper, and that already was addressed in GLSTA. That was the subject of GLSTA in that the administrator decided one reason and notified the plaintiff one reason during the administrative appeal and then said on litigation for the first time, oh, you know what, now that we look at it again, we think there's a second reason under the same clause to deny the claim. But that's not this case here. GLSTA has always been consistent with what its decision was. It's just the look-back period that was applied at the end included one extra month. That was not included in the original look-back period, but both look-back periods still contain within it the same month of April, which was a basis for denying the claim initially, the treatment sought and obtained in April, and was also a basis for denying it on appeal. Let's stay with that, then, as in GLSTA. I quote your brief at page 5. The new employee's condition will be deemed a pre-existing condition if it existed during the three months prior to the eligibility date. You repeat that throughout the brief, including in a header to one of the argument sections. That's not the definition. It could exist and yet not be pre-ex. It could exist but not be pre-ex unless if no treatment or services were received or provided during the pre-ex condition, and our contention is that there was treatment and services provided during the pre-ex period in the month of April of 2014, which falls under either look-back period that's been discussed in the briefs. I pulled the Harvard Vanguard record from the file of the April appointment with the doctor. The diagnosis is basal cell carcinoma, reason for visit, red area on the back, and then a referral is made to dermatology. Which of those are services? Under Etna's interpretation, it was going to the doctor to have this lesion examined and documented. Because someone goes to a doctor because they've got a red spot on their back, from your point of view, are services for the condition that is later diagnosed to be malignant melanoma? The way Etna interpreted and implied the pre-existing condition, treatment and services were received because he went to the doctor to have it examined. Can you imagine what that does to ERISA law? Years later, somebody is diagnosed with something that you conclude is a condition, but their routine visits to a PCP several years before, you then would say is services for a condition when, in fact, the doctor does not diagnose it at all. First, under the years later provision, it determines what the look-back period was. Here, it was only within one year of becoming eligible that the pre-existing clause applied. So it was pretty narrow to begin with, and then it was only three months. You're missing my larger point. ERISA largely depends on certainty and predictability. Etna's position, it strikes me, induces all sorts of uncertainty into benefits law. If I may respond, Etna's position is that within that pre-existing condition clause is what's known as a recent treatment exclusion. Basically, it does not require that a formal diagnosis of the condition must first be made before one can find that treatment or services were rendered. Under a recent treatment exclusion, which the First Circuit reviewed and analyzed as reasonable in Hughes v. Boston Mutual Life Insurance Company under a similar pre-existing clause, it's not seeking to weed out any condition that was known within the look-back period. For instance, a hypothetical that was presented here, had he gone to the dermatologist July 1st instead of, say, June 30th, and on July 1st she had said malignant melanoma was the diagnosis. Okay, look back at what the medical records are within this three-month look-back period. You still have this April visit where the melanoma was seen and treated by his doctor because he had this lesion on his back. That was the physical manifestation of the melanoma. Actually, do we even know that? It's highly likely, but that is not what his PCP found or diagnosed. In fact, it isn't until there's a cell biopsy after the visit to the dermatologist that you finally get a diagnosis. Even the dermatologist looking at it can't tell. But then to read that into a clause then essentially strips away the majority of the pre-existing condition clause as it exists in the contract. You all could have written it differently, and if you had I suspect you would have had a labor management issue about the breadth of the pre-existing condition clause. I'm not certain employees would have been happy with that reading. Never mind. What if he'd gone to his dentist and said, did that anesthesia you gave me cause this lesion I have on my neck? And the dentist looked at it and said, no, anesthesia can't cause that. Would that trigger the pre-ex clause? If it determined, then two months later he goes and sees a dermatologist who says you've got melanoma. No, because if you're going to the dentist, he was not seeking treatment for the lesion. Well, he asked about the lesion. He asked the dentist, do you think that that's caused by some allergic reaction to the anesthesia, and the dentist looked at it and said, no. Maybe go see a dermatologist, see what they think. I think that's reaching and that would not, but he did not go to a dentist here. He went to a general practitioner. So why does that make a difference? Because a general practitioner at least has some knowledge that there was, the lesion was something in the skin cancer family. He unfortunately misdiagnosed it wrong, but he did look at that lesion and make a diagnosis that was within the skin cancer family, that there was something not 100% right with it, unfortunately. So if his GP, if his general practitioner had looked at it and said, hmm, I think that's probably an allergic reaction to some anesthesia you had from your dentist, would the pre-ex be treated then? Under atlas interpretation, yes, because again, why else would you go to a doctor for if not treatment? And he went to this doctor specifically, a general practitioner, a medical doctor who was somebody unlike a dentist, this would be in his realm of practice. Why else would you go to a doctor to have him look at a lesion on your back if you're not seeking treatment, if you're not wanting this doctor to render treatment for it? On that argument, if he went to a witch doctor, that would take the position that you have just described. I don't think they would go that far and say a witch doctor. Why not? He went for purposes of diagnosis and treatment of the lesion, which is exactly what this man did. And I suppose one way to get out of that fix is to say, well, you've at least got to go to a recognized doctor, not a witch doctor. But that's not the way Aetna has phrased its position. But I do believe under the plan in general, physician and doctor are defined. If not, there is language in the plan in general about how a physician is a medical doctor. We've asked you a lot of questions. Is there any point you would like to make in your remaining one minute? Yes, thank you, Your Honor. As I discussed earlier, the proper remedy here is still remand. As Judge Piatta pointed out, there was no way Aetna could have made a determination. At least at a minimum under the any occupation test of disability. There was no way in 2015 it had any ability to look forward into March of 2017 and determine if he had met that test of disability. The decision from the district court offers no reasoning or foundation for its statement that it's going to, quote, allow, close quote, benefits. That's all it merely says. There's no reasoning. There's no justification or explanation as to what that is meant. Further, we also argue it's abuse of discretion for the judge to have awarded prejudgment interest in this action because one, remand should have been done. Two, there's no foundation, no transparency as to what the judge based the prejudgment interest calculation on. Also, two, it was improper to serve Aetna's role as the claim administrator to calculate and determine the benefit payments, which is what its role is under the plan. Here, apparently, we have to guess because there is nothing in the record to show what the judge based it on. She based it solely on a spreadsheet that plaintiff presented saying, here's what I think I should have been paid to the present. I thought there was no dispute about the accuracy of the figures on that spreadsheet. Am I wrong? I would say the opposition did not fully address that because the overarching position was that it was wrong to answer. Thank you. Thank you. Okay, thank you both. Thank you. Thank you. Thank you both.